## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHRISTOPHER L. PEDRICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 11-1221-SRF |
| | ) |
| KATHERINE ROTEN, | ) |
| JESSICA PEDRICK, and TIAA-CREF | ) |
| INDIVIDUAL & INSTITUTIONAL | ) |
| SERVICES, LLC, a Delaware Limited | ) |
| Liability Company, | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OPINION

### I.     INTRODUCTION

The plaintiff, Christopher L. Pedrick ("Plaintiff"), brought this action seeking legal and equitable relief to obtain a two-thirds distribution of the proceeds of an annuity account maintained by defendant, TIAA-CREF Individual and Institutional Services, LLC ("TIAA-CREF"). Plaintiff and his two daughters, defendants Katherine Roten ("Roten") and Jessica Pedrick ("Pedrick"), are the designated beneficiaries. TIAA-CREF distributed the proceeds of the account in equal one-third shares to Plaintiff, Roten and Pedrick in accordance with the original beneficiary designation made by decedent Nancy T. Pedrick, Plaintiff's mother. Prior to her death, Nancy Pedrick attempted to change the beneficiary designation for the annuity. TIAA-CREF did not implement the change. Plaintiff sued Roten and Pedrick for unjust enrichment and

1

seeks imposition of a constructive trust over their share of the proceeds. Plaintiff sued TIAA-CREF for negligence[1] and breach of contract and requests reformation of the annuity contract.

Pending before the court are the following motions: (1) the Motion of defendants, Roten, Pedrick, and TIAA-CREF (collectively, "Defendants") for Judgment on the Pleadings[2] (D.I. 13; D.I. 20); and (2) Plaintiff's Motion for Leave to File an Amended Complaint (D.I. 23).

For the reasons set forth below, Defendants' Motion for Judgment on the Pleadings is GRANTED in part, and Plaintiff's Motion for Leave to File an Amended Complaint is GRANTED.

## II.   BACKGROUND

### A. Facts

This action concerns a dispute over the proceeds of an annuity purchased by Nancy T. Pedrick (the "Decedent"). The Decedent was the mother of the Plaintiff, and grandmother of defendants Roten and Pedrick. (D.I. 18 at 3)

On July 21, 2005, the Decedent executed a last will and testament (the "Will") (D.I. 23, Ex. A)[3] and a revocable trust agreement (the "Trust") (*Id.*, Ex. B). The terms of the Will required the sale of Decedent's tangible personal property (not otherwise disposed of in the Will) so that

---

[1] The negligence count is dismissed with prejudice by stipulation of the parties. (D.I. 22)

[2] Defendants Roten and Pedrick filed the pending Motion for Judgment on the Pleadings. (D.I. 13) TIAA-CREF filed a Notice of Joinder. (D.I. 20)

[3] The court's Opinion refers throughout to the exhibits included with Plaintiff's proposed amended complaint (D.I. 23). Although Plaintiff references the same exhibits in his original complaint, (D.I. 1 ¶¶ 8, 9, 11), the exhibits were not attached to the pleading. Nevertheless, "[i]n deciding whether judgment on the pleadings is appropriate, courts may consider the pleadings, corresponding exhibits thereto, *and documents incorporated by reference.*" *Novartis Pharms. Corp. v. Actavis, Inc.*, 2012 WL 6212619, at *2 (D. Del. Dec. 5, 2012) (emphasis added) (citing *Butamax Advanced Biofuels LLC v. Gevo*, 2012 WL 2365905, at *1 (D. Del. June 21, 2012)).

2

the sale proceeds and remainder of the estate would fund the Trust.[4] (D.I. 18 at 3) The Trust assets were to be distributed upon the Decedent's death in equal one-third (1/3) shares to Plaintiff, Roten and Pedrick. (*Id.*)

On September 7, 2010, the Decedent revised her estate plan by executing a codicil to the Will (the "Codicil") (D.I. 23, Ex. C) and an amendment to the Trust (the "Trust Amendment") (*Id.*, Ex. D). The Codicil directed a distribution of the Decedent's tangible personal property equally between Roten and Pedrick. The Trust Amendment altered the Trust's distribution ratio such that Plaintiff would receive two-thirds (2/3) of the Trust assets, and Roten and Pedrick would split the remaining one-third (1/3) of the assets.

At all times relevant to this matter, the Decedent held an annuity account with TIAA-CREF. Consistent with the Trust's original dispositional scheme, the Decedent initially listed as equal one-third beneficiaries of the annuity account Plaintiff, Roten and Pedrick. (D.I. 18 at 3) In accordance with her revised estate plan, however, the Decedent sought to change the annuity account beneficiary to the Trust entity (as amended), so that Plaintiff would receive two-thirds of the annuity account proceeds, and Roten and Pedrick would split the remaining one-third of the proceeds. (*Id.*) On October 16, 2010, the Decedent attempted to effect the beneficiary change by executing a beneficiary designation form ("Beneficiary Designation") provided by TIAA-CREF. (D.I. 23, Ex. E)

Section 3 of the Beneficiary Designation is entitled "CHOOSE YOUR BENEFICIARIES . . . Tell us who should receive your account balance after your death." (*Id.*) In addition to designated spaces for beneficiary information, Section 3 includes a blank box with the following instructions: "Check this box and attach a signed and dated page, to list additional primary and/or

---

[4] The Decedent's dispositional plan is commonly referred to as a "pour-over will." *See, e.g.*, *Wilgus v. Estate of Law*, 1997 WL 528241, at *1 (Del. Super. Ct. July 16, 1997).

3

contingent beneficiaries, a trust, or to provide additional instructions." (*Id.*) The Decedent drew a check in the box, attached to the Beneficiary Designation a copy of the Trust Amendment, and mailed the signed form to TIAA-CREF. (*Id.*) On October 19, 2010, the Decedent passed away. (D.I. 14 at 3) By letter dated November 1, 2010, TIAA-CREF advised the Decedent that it was unable to process the requested beneficiary change, explaining

> [t]he designation cannot be recorded since the beneficiary section was left blank. Also, the attached Amendment Of [sic] Trust needs clarification. If you wish to name an individual, please provide us with the name, date of birth and social security number or if you wish to name the Trust as beneficiary, please inform us of the date of the Trust.[5] A phone call or signed note with the Trust information is acceptable.
> *The beneficiary designation we currently have on file will remain in effect until we receive the requested information.*

(D.I. 23, Ex. E) TIAA-CREF subsequently learned of the Decedent's death and distributed the annuity account proceeds in equal one-third shares to Plaintiff, Roten and Pedrick. (D.I. 1 ¶ 13)

## B. Procedural History

Plaintiff initiated this action on December 12, 2011 seeking imposition of a constructive trust over the annuity proceeds, reformation of the annuity beneficiary designation, and recovery of damages against Roten and Pedrick for unjust enrichment. (D.I. 1) Plaintiff also asserted against TIAA-CREF claims for negligence and breach of contract. (*Id.*) The Plaintiff demands judgment against TIAA-CREF and the individual defendants, jointly and severally, for compensatory damages. (*Id.*) On January 20, 2012, Roten and Pedrick filed cross-claims against TIAA-CREF for negligence. (D.I 8; D.I. 9)

Roten and Pedrick filed a Motion for Judgment on the Pleadings on February 3, 2012. (D.I. 13) On February 24, 2012 TIAA-CREF joined the co-defendants' Motion, and filed its own

---

[5] The Trust Amendment attached to the form indicates both the date of the Trust Amendment and the date of the Trust. (D.I. 23, Ex. E)

4

Motion for Partial Judgment on the Pleadings. (D.I. 19; D.I. 20) All parties signed a stipulation on March 13, 2012, dismissing with prejudice Count III (negligence) of the complaint. (D.I. 22) Thereafter, on May 7, 2012, Plaintiff filed a Motion for Leave to File an Amended Complaint. (D.I. 24)

## III.   LEGAL STANDARDS

### A. Judgment on the Pleadings

Defendants move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Federal Rule of Civil Procedure 12(c) states, in pertinent part, "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment will not be granted under Rule 12(c) "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citation omitted).

A motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss. *See Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). Accordingly, "the [c]ourt must accept all well-pleaded factual allegations as true, and must draw all reasonable inferences in favor of the non-moving party." *Giove v. Holden*, 2012 WL 2357586, at *2 (D. Del. June 19, 2012) (citing *Turbe*, 938 F.2d at 428). This determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "In deciding whether judgment on the pleadings is appropriate, courts may consider the pleadings, corresponding exhibits thereto, and documents incorporated by reference." *Novartis Pharms. Corp.*, 2012 WL 6212619, at *2 (citing *Butamax Advanced Biofuels LLC*, 2012 WL 2365905, at *1).

5

## B. Leave to File an Amended Complaint

Plaintiff moves for leave to file an amended complaint pursuant to Federal Rule of Civil

Procedure 15(a). Federal Rule of Civil Procedure 15(a) permits a party to amend a pleading

'once as a matter of course at any time before a responsive pleading is served.' . . . [A]fter an answer has been filed, the plaintiff may amend only with leave of court or the written consent of the opposing party, but 'leave shall be freely given when justice so requires.'

*Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting Fed. R. Civ. P. 15(a)). "The question

of whether to grant leave to amend a complaint is within the discretion of the district court . . .

[and] leave to amend should be freely given, unless the amendment would be futile or there is

evidence of undue delay, bad faith, or undue prejudice." *Tracinda Corp. v. Daimler Chrysler

A.G.*, 200 F. Supp. 2d 439, 443 (D. Del. 2002) (citations omitted).

## IV. DISCUSSION

### A. Judgment on the Pleadings

#### 1. Equitable Remedies

##### i. Constructive Trust

The Plaintiff claims that defendants Roten and Pedrick were unjustly enriched because

they allegedly received a greater share of the annuity proceeds than they are entitled to retain.

(D.I. 18 at 6) He requests that the court impose a constructive trust over the annuity proceeds.

(*Id.*)

The Defendants argue that imposition of a constructive trust is improper because the

Plaintiff fails in his complaint to include averments of wrongful conduct on the parts of Roten or

Pedrick. (D.I. 14 at 5) Consequently, Defendants contend that Plaintiff's unjust enrichment claim

cannot stand.

6

Plaintiff counters that he is not required to plead wrongdoing by Roten or Pedrick in order to assert a claim for unjust enrichment. (D.I. 18 at 6-7) Moreover, Plaintiff argues TIAA-CREF's rejection of the Beneficiary Designation constitutes wrongdoing that is sufficient to support the imposition of a constructive trust over the funds Roten and Pedrick received. (*Id.*)

The court finds that the pleadings are sufficient to state a claim for unjust enrichment. "Unjust enrichment is defined as 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.'" *Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999) (quoting *Fleer Corp. v. Topps Chewing Gum*, 539 A.2d 1060, 1062 (Del. 1988)). A party claiming unjust enrichment must prove: "'(1) an enrichment, (2) an impoverishment,[6] (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law.'" *Otto v. Gore*, 45 A.3d 120, 138 (Del. 2012) (quoting *MetCap Sec. LLC v. Pearl Senior Care, Inc.*, 2009 WL 513756, at *5 (Del. Ch. Feb. 27, 2009), *aff'd*, 977 A.2d 899 (Del. 2009)).

In the present matter, the complaint avers that defendants Roten and Pedrick obtained a greater share of annuity proceeds than they were entitled to receive because co-defendant TIAA-CREF failed to satisfy its obligation under the annuity contract and distribute the proceeds in accordance with the Beneficiary Designation. (D.I. 1) Accordingly, the pleadings support an unjust enrichment claim because Roten and Pedrick allegedly retain a benefit at Plaintiff's expense and their retention, if wrongful, is against the fundamental principles of justice, equity and good conscience. *See Schock*, 732 A.2d at 232-33.

---

[6] "'Impoverishment' does not require that the plaintiff seeking a restitutionary remedy suffer an actual financial loss, as distinguished from being deprived of the benefit unjustifiably conferred upon the defendant." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010)

7

Although the complaint properly states a cause of action for unjust enrichment, the equitable remedy Plaintiff requests, i.e., imposition of a constructive trust, lacks the requisite factual support and, therefore, Defendants are entitled to judgment on the pleadings as to Plaintiff's constructive trust claim.

> A constructive trust is not designed to effectuate the presumed intent of the parties, but to redress a wrong. When one party, by virtue of fraudulent, unfair or unconscionable conduct, is enriched at the expense of another to whom he or she owes some duty, a constructive trust will be imposed.

*Hogg v. Walker*, 622 A.2d 648, 652 (Del. 1993) (citing *Adams v. Jankouskas*, 452 A.2d 148, 152 (Del. 1982)). "Some fraudulent or unfair and unconscionable conduct is essential." *Id.* (citing *Greenly v. Greenly*, 49 A.2d 126, 129 (Del. Ch. 1946)).

In the instant case, Plaintiff fails to allege in the complaint any fraudulent or unconscionable conduct by Defendants necessary to support imposition of a constructive trust. Plaintiff's contention, that TIAA-CREF "unreasonably refused to process" (D.I. 1 ¶ 35), or "wrongfully rejected" (D.I. 18 at 6) the Beneficiary Designation, accepted as true for purposes of the pending motion, does not plead fraudulent or unconscionable conduct.[7]

Plaintiff cites *Dryden v. Estate of Gallucio*, 2007 WL 185467 (Del. Ch. Jan. 11, 2007) for the proposition that imposition of a constructive trust does not always require proof of wrongdoing. According to Plaintiff, the *Dryden* court "impos[ed] [a] constructive trust on proceeds of [a] life insurance policy received by defendant who was unaware of plaintiff's entitlement to the proceeds." (D.I. 37 at 2) The *Dryden* decision, however, does not compel the imposition of a constructive trust in the pending matter.

---

[7] Fraud is defined as "[a] tort arising from a knowing misrepresentation, concealment of material fact, or reckless misrepresentation made to induce another to act to his or her detriment," or "[u]nconscionable dealing; esp[ecially], in contract law, the unfair use of the power arising out of the parties' relative positions and resulting in an unconscionable bargain." Black's Law Dictionary (9th ed. 2009). Unconscionable conduct is defined as "showing no regard for conscience; affronting the sense of justice, decency, or reasonableness." *Id.*

*Dryden* is distinguishable from the present case as it does not involve alleged erroneous conduct on the part of a financial institution obliged to pay death benefits to a decedent's beneficiaries. Instead, the plaintiff in *Dryden* brought a cause of action against a decedent's estate based on the decedent's own misconduct in carrying out financial transactions designed to avoid his alimony obligations under a divorce agreement with the plaintiff. Specifically, the decedent named as the beneficiary of his $10,000 life insurance policy his second wife, the co-defendant, instead of the plaintiff as required by the divorce agreement. *Dryden*, 2007 WL 185467, at *1-2. The decedent also took the assets with which he promised to fund the plaintiff's monthly alimony payments and transferred them to a new bank account jointly held with the co-defendant, placing them beyond the plaintiff's legal reach. *Id.* at *2, 5-6. Although the *Dryden* court held that the plaintiff "established [] her entitlement to a constructive trust" over the insurance policy proceeds, the court ultimately did not impose a constructive trust.[8] *Id.* at *6. Consequently, *Dryden* is distinguishable, and inapposite with respect to the present matter.

Under Delaware law, constructive trusts "do not arise from the intent of the parties," but depend for their existence on the defendant's fraudulent or unfair and unconscionable conduct. *Greenly*, 49 A.2d at 129 (citation omitted). *See also Hogg*, 622 A.2d at 652; *Jankouskas*, 452 A.2d at 152. The present matter centers on effectuating the Decedent's presumed intent, not on redressing fraudulent or unconscionable conduct. Plaintiff makes clear this point in his pleadings: "The defendants received more than the share they were due, to the detriment of the plaintiff and the decedent's intent." (D.I. 37 at 2) Accordingly, Defendants are entitled to judgment on the pleadings as to Plaintiff's constructive trust claim.

---

[8] The *Dryden* court held that "[t]he constructive trust remedy can be achieved by the entry of judgment against [the defendant] in the amount of $10,000." *Dryden*, 2007 WL 185467, at *6.

Plaintiff, however, is not without an equitable remedy for the alleged unjust enrichment. The Delaware Court of Chancery has held that "[t]he typical remedy for unjust enrichment is restitution. A constructive trust is simply a form of restitution in specie." *B.A.S.S. Group, LLC v. Coastal Supply Co.*, 2009 WL 1743730, at *7 (Del. Ch. June 19, 2009) (citations omitted). Plaintiff cites this proposition in his Answering Brief. (D.I. 18 at 5) Accordingly, the effective remedy Plaintiff seeks is restitution of the funds Roten and Pedrick received in excess of the amount to which they are allegedly entitled.

To obtain restitution in a claim for unjust enrichment, a plaintiff must "show that the defendants were unjustly enriched, that the defendants secured a benefit, and that it would be unconscionable to allow them to retain that benefit." *Schock*, 732 A.2d at 232 (citing *Fleer Corp.*, 539 A.2d at 1063). "Restitution serves to 'deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits honestly in the first instance, and even though the plaintiff may have suffered no demonstrable losses.'" *Id.* at 232-33 (quoting *Fleer Corp.*, 539 A.2d at 1063). "Restitution is permitted even when the defendant retaining the benefit is not a wrongdoer." *Id.* at 232 (citing *Fleer Corp.*, 539 A.2d at 1063).

In the present matter, accepting Plaintiff's factual allegations as true, the pleadings support a claim for restitution. Defendants Roten and Pedrick were unjustly enriched because they secured a benefit allegedly belonging to Plaintiff, specifically, an additional one-third share of the Decedent's annuity account proceeds, and it would be unfair to allow them to retain that benefit at Plaintiff's expense. Consequently, the court grants Defendants' Motion for Judgment on the Pleadings, limited to dismissal of the equitable remedy pleaded in Count I of the complaint for imposition of a constructive trust, and without prejudice to seek damages in the

10

form of restitution of excess annuity proceeds allegedly received and retained by defendants Roten and Pedrick.

## ii.   Reformation

Plaintiff's claim for reformation of the Beneficiary Designation fails because the facts do not support the existence of a mutual mistake or unilateral mistake accompanied by fraud, even when drawing all reasonable inferences in the Plaintiff's favor. "It is well established [under Delaware law] that mutual mistake or unilateral mistake accompanied by fraud is needed to support a bill for reformation." *Burris v. Wilmington Trust Co.*, 301 A.2d 277, 279 (Del. 1972) (citing *Gracelawn Mem'l Park, Inc. v. Eastern Mem'l Consultants, Inc.*, 280 A.2d 745 (Del. Ch. 1971), *aff'd per curiam*, 291 A.2d 276 (Del. 1972)). *See also Croxton v. Chen*, 1998 WL 515346, at *2 (Del. June 26, 1998). Accordingly, reformation is proper "'only when the contract does not represent the parties' intent because of fraud, mutual mistake or, in exceptional cases, a unilateral mistake coupled with the other parties' knowing silence.'"[9] *Emmert v. Prade*, 711

---

[9] In *Colvocoresses v. W. S. Wasserman Co.*, 28 A.2d 588 (Del. Ch. 1942), the Delaware Court of Chancery defined the concept of "knowing silence."

> The right [of reformation] may be exercised in a clear case when the alleged mistake sought to be corrected relates [] to the contents of the instrument . . . . In the absence of some element of fraud, such a mistake must be mutual and common to both parties; a mere unilateral mistake is not within that rule. It necessarily follows that a clear mistake by one party, coupled with ignorance thereof by the other party, is not a mutual mistake, and will not be corrected. But when the mistake of one party, with respect to the meaning of some material provision of the signed contract, is accompanied not only by the other party's knowledge thereof, but also by his silence, it is said to be equivalent to a mutual mistake; at any rate, while not strictly a mutual mistake, equity will reform the instrument. Perhaps silence on the part of the defendant, under such circumstances, is regarded as a species of inequitable conduct in the nature of fraud, of material importance; the mere mistake of one party is not the only element involved.

*Colvocoresses*, 28 A.2d at 589-90 (internal citations omitted).

11

A.2d 1217, 1219 (Del. Ch. 1997) (quoting *James River-Pennington, Inc. v. CRSS Capital, Inc.*, 1995 WL 106554, at *7 (Del. Ch. Mar. 6, 1995)). *See also Douglas v. Thrasher*, 489 A.2d 422, 426 (Del. 1985).

In the present case, the Decedent attempted to change the beneficiary of her annuity account by executing a Beneficiary Designation. TIAA-CREF, however, rejected the Decedent's Beneficiary Designation because "the beneficiary section was left blank." (D.I. 23, Ex. E) Unfortunately, the Decedent died before receiving TIAA-CREF's correspondence notifying her of the form's alleged deficiency. These facts, viewed as true, illustrate only a unilateral mistake on the part of the Decedent and do not support any inference of fraud or knowing silence by TIAA-CREF. "A unilateral mistake cannot alone form the basis for reformation." *James River-Pennington, Inc.*, 1995 WL 106554, at *7 (citing *In re Enstar Corp.*, 604 A.2d 404, 413 (Del. 1992)). *See also Colvocoresses*, 28 A.2d at 590.

Plaintiff, nevertheless, maintains that reformation is proper because the Decedent made a unilateral mistake (by submitting what she erroneously believed to be a duly executed Beneficiary Designation) and TIAA-CREF was "essentially silent during the operative time period between receipt of the Beneficiary Designation and the Decedent's death." (D.I 18 at 9) The court finds Plaintiff's argument unpersuasive for two reasons.

First, Plaintiff's assertion that TIAA-CREF remained knowingly silent presumes that TIAA-CREF knew of the Beneficiary Designation's alleged deficiencies and, nevertheless, purposefully withheld that information from the Decedent until after her death. This conclusion does not follow, even when drawing all reasonable inferences in the Plaintiff's favor. The pleading indicates no more than the chronology of events. TIAA-CREF received the Beneficiary Designation on October 22, 2010 and responded by letter dated November 1, 2010, notifying the

12

Decedent of the form's alleged deficiencies. (D.I. 23, Ex. E) The court will not speculate as to facts outside of the pleadings to account for the timing of TIAA-CREF's response.

Second, the only reasonable conclusion supported by the pleading is that the Decedent passed away before TIAA-CREF received the Beneficiary Designation. Therefore, it would be factually impossible for TIAA-CREF to have remained knowingly silent. According to the pleading, the Decedent executed the Beneficiary Designation on Saturday, October 16, 2010 (D.I. 23, Ex. E); the Decedent passed away on Tuesday, October 19, 2010 (D.I. 18 at 3); and TIAA-CREF received the Beneficiary Designation on Friday, October 22, 2010.[10] (D.I. 23, Ex. E) Plaintiff alleges no facts in the complaint to suggest that TIAA-CREF knew of the Beneficiary Designation's existence prior to the Decedent's death, which renders meritless any argument that TIAA-CREF remained knowingly silent.

Similarly unpersuasive is Plaintiff's suggestion that, with respect to beneficiary designations, a unilateral mistake alone justifies reformation. In support of this proposition Plaintiff cites *Roos v. Roos*, 203 A.2d 140 (Del. Ch. 1964). In *Roos*, the court reformed a voluntary declaration of trust after the settlor's death on the basis of the settlor's unilateral mistake.[11] The court distinguished conventional contracts from a declaration of trust, explaining

> the instrument with which we are concerned does not pretend to record the provisions of a prior oral agreement. It is rather a voluntary declaration of trust, the settlor having received no consideration for its creation. In such a case a unilateral mistake on the part of the settlor is sufficient to warrant reformation.

---

[10] The copy of the Beneficiary Designation provided in the record contains a "TIAA-CREF" time-stamp with the date "2010 OCT 22," which is accepted, on its face, as the date TIAA-CREF received the Beneficiary Designation, in the absence of any other evidence in the record. (D.I. 23, Ex. E)

[11] The settlor "executed the declaration of trust in the mistaken belief that it provided for the contingency of his death prior to that of his wife." *Roos*, 203 A.2d at 143.

13

*Roos*, 203 A.2d at 142. Plaintiff argues, on that basis, "[t]he Beneficiary Designation it [sic] not a contract between two parties, it is the Decedent's directive as to how she wanted the annuity account distributed. She executed the Beneficiary Designation voluntarily, unilaterally and without any consideration." (D.I. 18 at 9) In contrast, the Beneficiary Designation is an instrument used to modify an existing annuity contract between the Decedent and TIAA-CREF. Indeed, Plaintiff's complaint is based, in part, on *breach of contract* for TIAA-CREF's alleged wrongful rejection of the Beneficiary Designation. (D.I. 1 ¶¶ 35-37) Moreover, the reformation theory utilized in *Roos* applies only to cases involving declarations of trust.[12] Unlike a voluntary declaration of trust, the Beneficiary Designation retains no legal significance independent from the annuity contract. Accordingly, *Roos* is distinguishable, and inapplicable under the facts in this matter.

Because there has been no showing of mutual mistake or unilateral mistake accompanied by fraud, reformation is inapplicable in the instant case. Consequently, the court grants Defendants' Motion for Judgment on the Pleadings as to Plaintiff's reformation claim.

### 2. Breach of Contract

Defendants do not move for judgment on the pleadings as to Plaintiff's breach of contract claim. For the reasons stated in the court's ruling on Plaintiff's Motion for Leave to File an Amended Complaint, Plaintiff is permitted to amend the breach of contract count to allege the Decedent's substantial compliance with TIAA-CREF's requirements in the Beneficiary Designation.

---

[12] The *Roos* court discussed "[t]he elimination of the requirement of mutuality of mistake *with respect to voluntary declarations of trust*" and noted that "the great weight of authority recognizes the power of a court of equity to reform a *voluntary trust instrument* even after the death of the settlor." *Roos*, 203 A.2d at 142 (emphasis added). Accordingly, the court held that it "is empowered to reform a *trust instrument* for mistake when warranted by the evidence." *Id.* at 143 (emphasis added).

### B. Leave to File an Amended Complaint

Plaintiff's Motion for Leave to File an Amended Complaint is granted, as the amendment is not futile and Defendants will suffer no undue prejudice. The Third Circuit takes "a liberal approach to the amendment of pleadings to ensure that 'a particular claim will be decided on the merits rather than on technicalities.'" *Jang v. Boston Sci. Scimed, Inc.*, 2012 WL 3106753, at *2 (D. Del. July 31, 2012) (quoting *Dole v. Arco Chemical Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990)). Furthermore, "leave to amend should be freely given, unless the amendment would be futile or there is evidence of undue delay, bad faith, or undue prejudice." *Tracinda Corp.*, 200 F. Supp. 2d at 443 (citations omitted). An amendment is futile when it fails to state a claim upon which relief can be granted. *In re Merck & Co.*, 493 F.3d 393, 400 (3d Cir. 2007). "With respect to prejudice, the court focuses on the hardship to the defendant . . . and in particular will consider 'whether allowing an amendment would result in additional discovery, costs, and preparation to defend against new facts or new theories.'" *Jang*, 2012 WL 3106753, at *2 (quoting *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)). "In addition, the non-moving party must do more than simply claim prejudice; it must show that it will be unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it otherwise could have offered had the amendment been timely." *Hill v. Equitable Bank M.A.*, 109 F.R.D. 109, 112 (D. Del. 1985) (citing *Heyl & Patterson Int'l, Inc. v. F. D. Rich Housing, Inc.*, 663 F.2d 419, 426 (3d Cir. 1981)).

### 1. Futility

Plaintiff's proposed amendment is not futile because the amended complaint properly states claims upon which relief may be granted. Specifically, the amended complaint asserts a legal theory, "substantial compliance," that provides a basis for Plaintiff's unjust enrichment

claim. The crux of Plaintiff's amendment is "[t]he Decedent complied with the requirements set forth by TIAA-CREF to effectuate a change of beneficiary on the TIAA Account, or alternatively, substantially complied with such requirements." (D.I. 23, Ex. B ¶ 29)

Delaware[13] recognizes the doctrine of substantial compliance, which

> holds that if an insured has done all that it is reasonably possible or necessary for him to do in order to alter an insurance policy, and he has a right to so alter it, a court of equity will give effect to the intended change despite a failure to comply strictly with the formalities usually required for such a change.

*Travelers Life & Annuity Co. v. Desderio*, 2007 WL 2063035, at *2 (Del. Ch. July 3, 2007) (quoting *Green v. Conn. Mut. Life Ins. Co.*, 1977 WL 5189, at *3 (Del. Ch. May 25, 1977)).

In *Desderio*, the Court of Chancery held the decedent insured substantially complied with his annuity account's beneficiary change requirements by leaving on his agent's voice messaging system a message with unambiguous instructions. *Id.* at *2. The court reasoned that even though the annuity contract required beneficiary changes to be in writing, "[t]he [d]ecedent on that Sunday, with the insurance agent's office closed, had only a small number of hours to live and did all that he could do at that time under the circumstances." *Id.* Similar to this reasoning, "[a] court of equity, considering that done which ought to be done, will treat an attempted change as actually accomplished, where the insured has done all she could to bring about that end to the extent her intent is plainly manifested." *New York Life Ins. Co. v. Lawson*, 134 F. Supp. 63, 65 (D. Del. 1955). *See also Metro. Life Ins. Co. v. Jenkins*, 2010 WL 2898302, at *3 (D. Del. July

---

[13] "[W]hether the issue of substantial compliance is governed by state or federal law[] varies by circuit. Based on Third Circuit precedent, applying state law to the question of substantial compliance, this court applies the Delaware standard." *White v. White*, 2005 WL 121795, at *3 n.6 (D. Del. Jan. 18, 2005) (citing *Metro. Life Ins. Co. v. Kubichek*, 83 Fed. Appx. 425 (3d Cir. 2003)).

20, 2010); *White*, 2005 WL 121795, at \*3. Substantial compliance applies to annuity contracts.[14]
*See generally Desderio*, 2007 WL 2063035.

The pleadings are adequate to support Plaintiff's claim that the Decedent substantially
complied with TIAA-CREF's requirements in the Beneficiary Designation. The Decedent
completed the form with respect to providing her personal information, annuity contract
information, and signature. The Decedent attempted to designate a new beneficiary by attaching
to the Beneficiary Designation a copy of the Trust Amendment and by drawing a check mark in
a blank box, next to which appeared the instructions, "Check this box and attach a signed and
dated page, to list additional primary and/or contingent beneficiaries, a trust, or to provide
additional instructions." (D.I. 23, Ex. E) The Trust Amendment included the Decedent's

---

[14] It is important to point out a distinction between the doctrines of substantial compliance and
substantial performance. Defendants appear from their pleadings to mistake as identical the
doctrines of substantial compliance and substantial performance, and rely erroneously on the
definition of substantial performance to argue that substantial compliance does not apply in this
case. (D.I. 32 at 3) Although courts commonly refer to the two principles interchangeably, and
substantial compliance is derived from substantial performance, the doctrines apply in different
contexts. *See Phoenix Mut. Life Ins. Co. v. Adams*, 828 F. Supp. 379, 385 (D.S.C. 1993) (citing
*Peckham v. Gem State Mut.*, 964 F.2d 1043, 1052 (10th Cir. 1992)), *aff'd*, 30 F.3d 554 (4th Cir.
1994).

> It is perhaps most accurate to describe the doctrine of substantial
> compliance as an equitable principle often applied in the contract context and
> referred to interchangeably as substantial performance in that context. The
> term substantial performance is often used in the context of construction contract cases,
> while the term substantial compliance is often used in the context of tax law,
> the law of wills, and corporate law.

*Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 562 (4th Cir. 1994). *See also St. Paul
at Chase Corp. v. Mfrs. Life Ins. Co.*, 278 A.2d 12, 30 (Md. 1971) (explaining that
substantial performance applies most frequently in building and construction contracts).

signature, the dates of the Trust and Trust Amendment, dispositional instructions, and the beneficiaries' names.[15] (*Id.*)

The court is not persuaded by Defendants' argument that "TIAA lacked crucial information needed to effectuate the change" because "[t]he actual document attached . . . was only the amendment to the trust which did not contain a name or any other information that would enable TIAA to identify the intended beneficiary." (D.I. 32 at 3) While this contention represents a defense asserted by TIAA-CREF, it does not warrant dismissal of Plaintiff's claim against all Defendants at the pleadings stage.

As an initial matter, accepting the Plaintiff's allegations as true, the Beneficiary Designation's alleged ambiguity with respect to the payee is immaterial because Plaintiff claims that he is entitled to receive two-thirds of the annuity account proceeds whether TIAA-CREF paid the proceeds to the named beneficiaries outright or deposited the proceeds into the Trust. Furthermore,

[i]f there was an intent to transfer the benefits of the policy from the old to a new beneficiary and that intent was plainly manifested by acts as complete as the circumstances would admit of, . . . it is [not] important in a court of equity, where the contest is solely between the old beneficiary and the new one, that the transfer was not evidenced in strict accordance with a provision of the policy which was designed solely for the protection of the insuring company. Though the assignment may not be a good one at law, it may nevertheless be perfectly good in equity.

*New York Life Ins. Co. v. Cannon*, 194 A. 412, 413-14 (Del. Ch. 1937). Similarly, this court in

*Lawson* held,

[i]n the light of the deceased's knowledge of what was required of her near the terminal point of her existence, she had done all she thought necessary. True, there were steps yet to be completed before a beneficiary change, within the

---

[15] Although the Trust Amendment included only the beneficiaries' first names, it specified their relationship to the Decedent. (D.I. 23, Ex. E)

18

> meaning of the policy provisions and the insurance company's rules. But death intervened. The clear wishes of a dead woman should be respected . . . .
>
> I conclude the deceased's intent to change beneficiaries crystallized in law and warrants the finding she had complied with [the insurer's] requirements for designating her estate as the final beneficiary of the policies in suit.[16]

*Lawson*, 134 F. Supp. at 66. Following this reasoning, the doctrine of substantial compliance is applicable under the instant facts and supports Plaintiff's unjust enrichment claim. Consequently, the court grants Plaintiff's Motion for Leave to File an Amended Complaint.

### 2. Undue Prejudice

Defendants fail to show they will suffer undue prejudice if the court grants Plaintiff's Motion for Leave to Amend. Defendants contend the amendment is prejudicial because Defendants "will have to answer another Complaint and amend or re-file Defendants' Motion causing them to incur more fees that could have been avoided." (D.I. 25 ¶ 10) Incurring additional attorney's fees, however, does not constitute undue prejudice. For example, in *Adams v. Gould, Inc.*, 739 F.2d 858 (3d Cir. 1984), the court granted plaintiff's motion for leave to amend, in part, because defendants asserted "no particular prejudice except for additional counsel fees." *Id.* at 868. Accordingly, Defendants will suffer no undue prejudice if the court grants Plaintiff's Motion for Leave to File an Amended Complaint.

---

[16] Many Circuit Courts recognize that an important objective underlying substantial compliance is to carry out the decedent's intent.

> Of course, the insurer has no interest in the matter [of an insured's beneficiary changes] except in carrying out the intentions of its policyholder. . . . 'Courts are liberal in construing a reserve power to change a beneficiary and will look to the purpose of the parties in making a change of designation.
>
> Where [an] insured takes a positive action which evidences his obvious desire for a change of beneficiary, the courts will adopt such construction as will assist in carrying out such intention.'

*John Hancock Mut. Life Ins. Co. v. Douglass*, 156 F.2d 367, 369 (7th Cir. 1946) (quoting *Norris v. Norris*, 145 F.2d 99 (5th Cir. 1944)).

Defendants also assert, without explanation as to prejudice, that "Plaintiff is attempting to assert a new theory and bolster his complaint after it has been attacked by Defendants' Motion." (D.I. 25 ¶ 11) Plaintiff contends the amendment simply clarifies the complaint. (D.I. 23 at 2-3; D.I. 26 at 2) The amendment's characterization, however, is irrelevant. "If a party is already defending against similar claims, there is no prejudice and the amendment should be allowed." *Dow Chem. Can., Inc. v. HRD Corp.*, 2009 WL 1509455, at *1 (D. Del. Feb. 26, 2009) (citing *Tracinda Corp.*, 200 F. Supp. 2d at 443). Likewise, "[t]here is no undue prejudice if a party is on notice of the general nature of the claim contained in the proposed amendment." *Id.* (citing *Ferguson v. E.I. Du Pont de Nemours & Co.*, 1981 WL 478, at *1 (D. Del. May 20, 1981)).

In the instant case, the proposed amendment explains an additional, but related, theory to support Plaintiff's original claims, and thus, will not require Defendants to defend against new claims for relief. Defendants also were on notice of the substantial compliance theory contained in the proposed amendment because the theory was present and set forth identically in the original complaint, albeit under the label of a "Negligence" count, later dismissed by stipulation. (D.I. 1 ¶ 29) Furthermore, Plaintiff's amendment will not disadvantage Defendants under the scheduling order because sufficient time remains for pre-trial preparation.[17] (D.I. 31) Consequently, the court grants Plaintiff's Motion for Leave to File an Amended Complaint because Defendants fail to show they will suffer undue prejudice as a result of Plaintiff's amendment.

---

[17] The Defendants do not assert, nor does the court anticipate that Plaintiff's amendment will necessitate additional discovery that has not already occurred with regard to the facts underlying the various counts in the original complaint.

## V.    CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion for Judgment on the Pleadings is GRANTED in part, and Plaintiff's Motion for Leave to File an Amended Complaint is GRANTED. Specifically, the court grants Defendants judgment on the pleadings as to Plaintiff's constructive trust and reformation claims. The court grants Plaintiff leave to amend his unjust enrichment claim to add the equitable remedy of restitution, and his unjust enrichment and breach of contract claims to add the theory of substantial compliance.

Dated: January 29, 2013

Sherry R. Fallon
United States Magistrate Judge

21