## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHRISTOPHER L. PEDRICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 11-1221-SRF |
| | ) |
| KATHERINE ROTEN, | ) |
| JESSICA PEDRICK, AND TIAA-CREF | ) |
| INDIVIDUAL & INSTITUTIONAL | ) |
| SERVICES, LLC, | ) |
| | ) |
| Defendants. | ) |

## OPINION[1]

### I.      INTRODUCTION

The plaintiff, Christopher L. Pedrick ("Plaintiff"), brought this action seeking legal and equitable relief to obtain a two-thirds distribution of the proceeds of an annuity account maintained by defendant, TIAA-CREF Individual and Institutional Services, LLC ("TIAA-CREF"). (D.I. 59) Plaintiff and his two daughters, defendants Katherine Roten ("Roten") and Jessica Pedrick ("Pedrick"), are the beneficiaries of the annuity contract. TIAA-CREF distributed the proceeds of the account in equal one-third shares to Plaintiff, Roten and Pedrick in accordance with the original beneficiary designation made by decedent Nancy T. Pedrick, Plaintiff's mother. Prior to her death, Nancy Pedrick attempted to change the beneficiary of the annuity account. TIAA-CREF did not implement the change. Plaintiff sued TIAA-CREF for breach of contract, and Roten and Pedrick for unjust enrichment. (D.I. 59)

---

[1] On July 31, 2012, the parties jointly consented to the jurisdiction of a magistrate judge to conduct all proceedings and order the entry of final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (D.I. 30)

1

Based on the findings of fact and conclusions of law below,[2] the court will enter judgment in favor of Plaintiff and against TIAA-CREF on Plaintiff's claim for breach of contract, and in favor of Roten and Pedrick on Plaintiff's claim for unjust enrichment.

## II.     BACKGROUND

Plaintiff initiated this action on December 12, 2011, seeking imposition of a constructive trust over the annuity proceeds, reformation of the annuity beneficiary designation, and recovery of damages against Roten and Pedrick for unjust enrichment. (D.I. 1) Plaintiff also asserted claims against TIAA-CREF for negligence and breach of contract. (*Id.*) Plaintiff sought judgment against TIAA-CREF and the individual defendants, jointly and severally, for compensatory damages. (*Id.*) On January 20, 2012, Roten and Pedrick filed cross-claims against TIAA-CREF for negligence. (D.I 8; D.I. 9)

Roten and Pedrick filed a Motion for Judgment on the Pleadings on February 3, 2012. (D.I. 13) On February 24, 2012 TIAA-CREF joined the co-defendants' Motion, and filed its own Motion for Partial Judgment on the Pleadings. (D.I. 19; D.I. 20) All parties signed a stipulation on March 13, 2012, dismissing with prejudice Count III (negligence) of the complaint. (D.I. 22) Thereafter, on May 7, 2012, Plaintiff filed a Motion for Leave to File an Amended Complaint ("Motion to Amend"). (D.I. 24)

On September 5, 2012, the court held oral argument on the Defendants' motions for judgment on the pleadings and Plaintiff's Motion to Amend. On January 29, 2013, the court entered a Memorandum Opinion granting in part the Defendants' motions for judgment on the pleadings, and granting Plaintiff's Motion to Amend. *See Pedrick v. Roten*, 2013 WL 351667, at *1 (D. Del. Jan. 29, 2013). (*See also* D.I. 58)

---

[2] The following constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).

> Specifically, the court grant[ed] Defendants judgment on the pleadings as to Plaintiff's constructive trust and reformation claims. The court grant[ed] Plaintiff leave to amend his unjust enrichment claim to add the equitable remedy of restitution, and his unjust enrichment and breach of contract claims to add the theory of substantial compliance.

*Pedrick v. Roten*, 2013 WL 351667, at *11. Plaintiff filed his First Amended Complaint on January 30, 2013. (D.I. 59)

On February 5, 2013, the court held a pretrial conference, wherein the parties elected to present this matter to the court through briefing in lieu of trial. The parties submitted a Revised Proposed Pretrial Order on February 11, 2013 (D.I. 60), which the court subsequently entered on February 14, 2013. On March 15, 2013, the parties filed a Joint Appendix, including a statement of undisputed facts. (D.I. 63, Ex. A1) On April 19, 2013, the parties stipulated to a modified briefing schedule, with briefing to be completed by May 6, 2013. (D.I. 64) On August 5, 2013, the court held oral argument on the briefing on the merits.[3]

This is the decision on the merits based on the briefs and oral argument.

## III.  FINDINGS OF FACT

1.      Nancy T. Pedrick (the "Decedent") was Plaintiff's mother, and grandmother of defendants Roten and Pedrick. (D.I. 63, Ex. A1 ¶ 2)

2.      On July 21, 2005, the Decedent executed a last will and testament (the "Will") (*id.*, Ex. A4) and a revocable trust agreement (the "Trust") (*id.*, Ex. A5). The terms of the Will required the sale of the Decedent's tangible personal property (not otherwise disposed of in the Will) so that the sale proceeds and remainder of the estate would fund the Trust. (*Id.*, Ex. A4) The Trust assets were to be distributed upon the Decedent's death in equal one-third (1/3) shares to Plaintiff, Roten and Pedrick. (*Id.*, Ex. A5)

---

[3] Counsel for defendants Roten and Pedrick did not appear at oral argument to assert his clients' rights.

3.      On September 7, 2010, the Decedent revised her estate plan by executing a codicil to the Will (the "Codicil") (*id.*, Ex. A6) and an amendment to the Trust (the "Trust Amendment") (*id.*, Ex. A7). The Codicil directed a distribution of the Decedent's tangible personal property equally between Roten and Pedrick. (*Id.*, Ex. A6) The Trust Amendment altered the Trust's distribution ratio such that Plaintiff would receive two-thirds (2/3) of the Trust assets, and Roten and Pedrick would split the remaining one-third (1/3) of the assets. (*Id.*, Ex. A7)

4.      At all times relevant to this matter, the Decedent held an annuity account with TIAA-CREF. (*Id.*, Ex. A1 ¶ 1) Under the terms of the annuity contract, the Decedent had the right to change the beneficiary of the annuity proceeds "by written notice satisfactory to TIAA." (*Id.*, Ex. A12 at 100) The contract further provided that a change of beneficiary would "take effect as of the date it was signed, whether or not the signer is living at the time we [TIAA-CREF] receive it." (*Id.*)

5.      Consistent with the Trust's original dispositional scheme, the Decedent initially listed Plaintiff, Roten, and Pedrick as equal one-third beneficiaries of the annuity account. (*Id.*, Ex. A1 ¶ 10) In accordance with her revised estate plan, however, the Decedent sought to change the annuity account beneficiary to the Trust entity (as amended), so that Plaintiff would receive two-thirds of the annuity account proceeds, and Roten and Pedrick would split the remaining one-third of the proceeds. (*See id.*, Ex. A2)

6.      On October 16, 2010, the Decedent attempted to carry out the beneficiary change by executing a beneficiary designation form ("Beneficiary Designation"). (*Id.*, Exs. A1 ¶ 11, A2) The form was preprinted by TIAA-CREF and was the standard change-of-beneficiary form for the type of annuity contract in issue. (*See id.*, Exs. A1 ¶ 12, A29 at 452)

7.     The Decedent properly completed Sections 1 and 2 of the Beneficiary Designation. (*Id.*, Ex. A2)

8.     Section 3 of the Beneficiary Designation is entitled "CHOOSE YOUR BENEFICIARIES . . . Tell us who should receive your account balance after your death." (*Id.*) Section 3 includes a blank box with the following instructions: "Check this box and attach a signed and dated page, to list additional primary and/or contingent beneficiaries, a trust, or to provide additional instructions." (*Id.*) Below the box are spaces designated for information for two primary and two contingent beneficiaries. (*Id.*) The categories of information include: first name, middle initial, last name, social security number/tax identification number, date of birth, percentage, relationship, and gender. (*Id.*)

9.     The Decedent drew a check in the box, and left blank the spaces designated for primary and contingent beneficiary information. (*Id.*) The Decedent attached a copy of the Trust Amendment to the Beneficiary Designation. (*Id.*) The Trust Amendment included the Decedent's signature, the dates of the Trust and Trust Amendment, dispositional instructions, the beneficiaries' first names and their respective relationships to the Decedent. (*Id.*, Exs. A2, A7) The Decedent mailed the signed and dated Beneficiary Designation to TIAA-CREF.

10.    The Decedent passed away on October 19, 2010. (*Id.*, Ex. A1 ¶ 16)

11.    On October 21, 2010, Plaintiff notified TIAA-CREF via telephone that the Decedent had passed away. (*Id.*, Ex. A29 at 447-49)

12.    On October 22, 2010, TIAA-CREF received the Decedent's Beneficiary Designation. (*Id.*, Ex. A1 ¶ 17)

13.    On November 1, 2010, TIAA-CREF's Beneficiary Services department sent a letter to the Decedent's address explaining that it was unable to process the requested beneficiary change:

5

The designation cannot be recorded since the beneficiary section was left blank. Also, the attached Amendment Of [sic] Trust needs clarification. If you wish to name an individual, please provide us with the name, date of birth and social security number or if you wish to name the Trust as beneficiary, please inform us of the date of the Trust.[4] A phone call or signed note with the Trust information is acceptable.

*The beneficiary designation we currently have on file will remain in effect until we receive the requested information.*

(*Id.*, Exs. A3, A29 at 461-62)

14. Sometime in early November 2010, Plaintiff discovered TIAA-CREF's letter addressed to the Decedent,[5] and contacted TIAA-CREF to get more information. (*Id.*, Ex. A26 at 309-10) For confidentiality reasons, TIAA-CREF refused to provide Plaintiff with any details about the account, including beneficiary information, without first receiving a copy of the Decedent's death certificate. (*Id.*, Ex. A25 at 246-53) However, TIAA-CREF explained to Plaintiff that settlement of the annuity account and distribution of the proceeds would begin upon its receipt of the Decedent's death certificate. (*Id.*)

15. This put Plaintiff in a difficult position. Plaintiff was aware of the Trust Amendment and revised distribution of the Trust assets. (*Id.*, Ex. A25 at 255-57) Plaintiff was also aware of the Decedent's attempt to change the beneficiary of the annuity account, by virtue of TIAA-CREF's letter requesting information about the Beneficiary Designation. (*Id.*, Ex. A25 at 246-68) Yet, because TIAA would not disclose the annuity account beneficiary, Plaintiff was concerned that submitting the Decedent's death certificate could prevent him from receiving the correct

---

[4] The Trust Amendment attached to the form did, in fact, include the dates of the Trust Amendment and the Trust. (*See* D.I. 63, Ex. A7)

[5] Plaintiff began receiving the Decedent's forwarded mail following her death. (*Id.*, Ex. A26 at 309)

distribution of annuity proceeds, assuming the wrong beneficiary information was on file.[6] (*Id.*, Ex. A25 at 260-61, 272-73)

16.     TIAA-CREF explained to Plaintiff that it could delay distribution of the account proceeds "for [ten] days" if it received written notice from the executor of the Decedent's estate directing TIAA-CREF to withhold the proceeds. (*Id.*, Ex. A25 at 258) Following the ten-day period, however, TIAA-CREF would require a "court order" to stop the distribution of proceeds. (*Id.*, Ex. A25 at 253, 255, 259, 265)

17.     On November 8, 2010, Plaintiff sent TIAA-CREF several documents, including a copy of the Decedent's death certificate, and a letter that stated, in relevant part: "[P]lease stop all distributions . . . . There may be litigation due to intended changes [to the annuity account beneficiary] that were not applied before the untimely death of my mother." (*Id.*, Ex. A19 at 166-70)

18.     TIAA-CREF subsequently advised Plaintiff that its legal department would not accept the Beneficiary Designation (*see id.*, Ex. A14 at 138), and that the annuity proceeds would be distributed in equal, one-third shares between Plaintiff, Roten and Pedrick, pursuant to the original designation. (*Id.*, Exs. A25 at 232-34, A21 at 208)

19.     Plaintiff notified TIAA-CREF that he disputed its proposed distribution of the annuity account proceeds prior to the distribution being made to the beneficiaries. (*Id.*, Ex. A1 ¶ 19; *see also id.*, Ex. A19 at 167, Ex. A25 at 228-29, 235-36, 241-42, 251-52, 256-57, 259-61, 276-78) Plaintiff also notified Roten and Pedrick that he disputed TIAA-CREF's proposed distribution of the proceeds. (*Id.*, Ex. A1 ¶ 20)

---

[6] Plaintiff's position was further complicated by the fact that his relationship with his daughters, Roten and Pedrick, was already strained for reasons unrelated to this litigation. (*See* D.I. 63, Ex. 25 at 242-43, 256, 259-60, 268-69)

7

20. On Friday, January 7, 2010, TIAA-CREF advised Plaintiff that it had received account distribution forms from Roten and Pedrick, and would begin settlement of the annuity account the following Monday, unless Plaintiff provided a "restraining order" before then. (*See* D.I. 63, Ex. 21 at 208-09; *id.*, Ex. 25 at 221)

21. TIAA-CREF ultimately distributed the annuity account proceeds in equal one-third shares to Plaintiff, Roten and Pedrick, despite Plaintiff's repeated protests. (*Id.*, Ex. A1 ¶ 21)

## IV. CONCLUSIONS OF LAW

### A. Breach of Contract

As a preliminary matter, it is necessary to address the fact that Plaintiff was not a contracting party to the annuity contract between the Decedent and TIAA-CREF before reaching the merits of Plaintiff's breach of contract claim. "It is well settled in Delaware that a third-party may recover on a contract made for his benefit. . . . But in order for there to be a third party beneficiary, the contracting parties must intend to confer the benefit." *Pierce Assoc., Inc. v. Nemours Found.*, 865 F.2d 530, 535 (3d Cir. 1988) (quoting *Ins. Co. of North America v. Waterhouse*, 424 A.2d 675, 679 (Del. Super. 1980)). Specifically,

[w]here it is the intention of the promisee to secure a performance for the benefit of another, either as a gift or in satisfaction of an obligation to that person, and the promisee makes a contract to do so, then such a third person has the right to enforce the contract against the promisor.

*Delmar News, Inc. v. Jacobs Oil Co.*, 584 A.2d 531, 534 (Del. Super. Ct. 1990) (citing Restatement (Second) of Contracts § 302 (1981)). On the other hand, where "the parties to the contract did not intend to benefit the third-party but the third-party happens to benefit from the performance of the contract either indirectly or coincidentally, such third person has no rights under the contract." *Id.* (citing *Insituform of North America, Inc. v. Chandler*, 534 A.2d 257, 269 (Del. Ch. 1987)).

8

There are generally three categories of third party beneficiary status: creditor beneficiary, donee beneficiary (also called intended beneficiary[7]), and incidental beneficiary; of these three, only an incidental beneficiary does not have standing to enforce the contract. *Global Energy Fin. LLC v. Peabody Energy Corp.*, 2010 WL 4056164, at \*25 (Del. Super. Ct. Oct. 14, 2010) (citing *Insituform of N. Am.*, 534 A.2d at 270).

Here, Plaintiff is an intended beneficiary of the annuity contract because the Decedent intended to secure performance of a promised act – the payment of annuity proceeds – for the benefit of Plaintiff (among others), and made a contract with TIAA-CREF to do so. Thus, Plaintiff has standing to enforce the annuity contract.

In order to establish a claim for breach of contract, a plaintiff must demonstrate: (1) the existence of a contract; (2) the breach of an obligation imposed by the contract; and (3) resulting damages. *VLIW Tech., L.L.C. v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

The parties do not dispute the existence of a valid annuity contract between the Decedent and TIAA-CREF. As to the second element, Plaintiff contends that TIAA-CREF breached the annuity contract by improperly rejecting the Beneficiary Designation because the Decedent "complied with the requirements set forth by TIAA-CREF to effectuate a change of beneficiary . . . , or alternatively, substantially complied with such requirements." (*See* D.I. 59 ¶ 26; D.I. 67 at 1) At its essence, Plaintiff's argument is that TIAA-CREF failed to distribute the annuity account proceeds in accordance with the contract, as modified by the Beneficiary Designation. Consequently, Plaintiff's breach of contract claim turns on the issue of whether the Beneficiary Designation effectively changed the beneficiary of the annuity contract. If so, then TIAA-CREF distributed the annuity account proceeds improperly, and Plaintiff is entitled to damages because

---

[7] *See, e.g., Pettit v. Country Life Homes, Inc.*, 2009 WL 846922, at \*3 (Del. Super. Ct. Mar. 31, 2009); Restatement (Second) of Contracts § 302 (1981).

he did not receive the entire amount due to him under the contract. On the other hand, if the Beneficiary Designation was ineffective, then TIAA-CREF properly distributed the annuity account proceeds, and Plaintiff's breach of contract claim fails.

The court finds that the Beneficiary Designation effectively accomplished a change of beneficiary because the Decedent strictly complied with the contractual requirements to complete the change,[8] and there were no conditions that restricted her right to do so. The contract provided that the Decedent had the right to change the beneficiary of the annuity account "by written notice satisfactory to TIAA." (D.I. 63, Ex. A12 at 100) This provision consists of two parts: (1) "written notice," and (2) "satisfactory to TIAA." (*Id.*)

The Decedent complied with the "written notice" requirement by executing the Beneficiary Designation and submitting it to TIAA-CREF. The notice was in writing (both typewritten and handwritten) on a form prepared by TIAA-CREF, and designated the Trust as the new beneficiary of the annuity account. (*See id.*, Ex. A2)

The Decedent's intent to designate the Trust as the beneficiary is apparent from the manner in which she completed the Beneficiary Designation. The instructions in Section 3 of the form[9] provided as follows: "Check this [blank] box and attach a signed and dated page, to list additional primary and/or contingent beneficiaries, a trust, or to provide additional instructions." (*Id.*) The Decedent drew a check in the box. Below the instructions were blank spaces for two primary and two contingent beneficiaries, which the Decedent did not fill in. (*Id.*) Next, the Decedent attached the Amendment of Trust to the Beneficiary Designation. (*Id.*) The document

---

[8] The court does not reach the issue of substantial compliance in light its the finding that the Decedent strictly complied with the requirements to change the beneficiary of the annuity account. *See generally Pedrick v. Roten*, 2013 WL 351667, at *8-11 (discussing the doctrine of substantial compliance).

[9] Section 3 of the form is labeled "CHOOSE YOUR BENEFICIARIES." (*See* D.I. 63, Ex. A2)

included the date of the Amendment of Trust, the date of the Trust, the Decedent's signature, and

provided, in pertinent part:

> The background of this instrument is as follows:
>
> A.     By an instrument dated July 21, 2005, NANCY T. PEDRICK of New Castle County, Delaware "trustor" created a revocable trust.
>
> B.     Trustor by this instrument intends to amend the original trust as provided in Article 9 of the trust.
>
> Trustor hereby amends the trust as follows:
>
> 1.     Paragraphs A, B and C of Article 2 are deleted and the following two new paragraphs are added to read as follows:
>
> "A.     Two-thirds thereof to my son, CHRISTOPHER, if he survives me.
>
> B.     One-third (or 100% if my son does not survive me) in equal shares to such of my grandchildren, KATHERINE and JESSICA, who survive me and, on a per stirpes bases, the issue of either of them who does not survive me."

(*Id.*, Exs. A2, A7) The Amendment of Trust, when considered as an attachment in the context of

the Beneficiary Designation's instructions, represents "a signed and dated page" that "list[s] . . .

a trust." (*Id.*, Ex. A2) Thus, the Decedent intended to change the beneficiary of the annuity

account to the Trust.

The court is not persuaded by TIAA-CREF's arguments that the Decedent's intent is

unclear, and the form is incomplete, both of which are based on the fact that the Decedent did not

fill in part of Section 3 in the Beneficiary Designation.[10] (*See* D.I. 65 at 9, 10-11) Although

Section 3 of the form contains blank spaces for two primary and two contingent beneficiaries, the

---

[10] TIAA-CREF also maintains that the Decedent's intent is ambiguous based on the content of the Amendment of Trust. (D.I. 65 at 10-11) According to TIAA-CREF, the Amendment of Trust could be construed to mean that the Decedent wanted to designate the Trust as the beneficiary or, alternatively, modify the ratio of annuity proceeds distributed to Plaintiff, Roten, and Pedrick. (*Id.*) That distinction, however, is unimportant for purposes of this case. The end result would be the same (tax implications aside), as Plaintiff would receive two-thirds of the annuity account proceeds whether TIAA-CREF paid the proceeds to the named beneficiaries outright or deposited the proceeds into the Trust. Furthermore, TIAA-CREF's internal procedures provide that it can pay beneficiaries of a trust "directly rather than through the [t]rust" if certain conditions are met. (*See* D.I. 63, Ex. A13 at 136)

11

nature of the information requested suggests that the spaces are meant only for persons (i.e., living beneficiaries), as opposed an entity, such as a trust. Indeed, the categories of information include: first name, middle initial, last name, social security number/tax identification number, date of birth, percentage, relationship, and gender. (*See* D.I. 63, Ex. A2) Moreover, the margins of Section 3 contain passages that repeatedly reference "living" beneficiaries.[11] (*See id.*)

This reading of the form is further supported by the instructions in Section 3, which direct the contract holder to check a box and "attach a signed and dated page, *to list additional* primary and/or contingent beneficiaries, [or] *a* trust." (*Id.* (emphasis added)) In other words, the contract holder would attach a signed and dated page only if he needed to list more than two primary and/or two contingent beneficiaries or, if he wished to designate a trust as the beneficiary. In the latter case, the inference fairly drawn from the instructions is that the contract holder need not provide trust information directly on the form, other than to check a blank box. After all, if TIAA-CREF intended for the contract holder to provide information relating to a trust beneficiary directly on the form, then the instructions for attaching a page "*to list . . . a trust*" would be superfluous.[12] (*Id.* (emphasis added))

Turning to the second part of the change-of-beneficiary provision, TIAA-CREF argues

[11] The text provides, in pertinent part part:

> A beneficiary can be an individual, an institution, a trust, or your estate. Your primary beneficiaries receive benefits after your death. If no primary beneficiary is *living*, the benefits become payable to your contingent beneficiaries. If none of the beneficiaries are *living* at the time of your death, the benefits go to your estate.
>
> . . . .
>
> If you have more than one primary beneficiary, benefits will be divided equally among the *living* beneficiaries unless you specify the percentage. . . .

(D.I. 63, Ex. A2 at 3-4 (emphasis added))

[12] In its brief on the merits, TIAA-CREF faults the Decedent for failing to attach a full copy of the Trust to the Beneficiary Designation. (*See* D.I. 65 at 11) While it would have been ideal if the Decedent had included a copy of the Trust, she certainly was not required to do so under the annuity contract or the instructions of the Beneficiary Designation.

12

that the phrase "satisfactory to TIAA" reserves a contractual right for it to exercise discretion in approving beneficiary changes.[13] (D.I. 65 at 7, 8)

The court disagrees with TIAA-CREF's assertion, and finds that the language is ambiguous.[14] Under Delaware law, a contract is ambiguous when the provision in controversy is "reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) (citing *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 926 (Del. 1982)). *See also MHM/LLC, Inc. v. Horizon Mental Health Mgmt., Inc.*, 1996 WL 592719, at *2 (Del. Ch. Oct. 3, 1996) ("To be ambiguous, the provision must be capable of being read reasonably to support the different positions.").

The phrase "satisfactory to TIAA" in the context of "written notice" is ambiguous in two ways. First, construing the provision raises the question of *what* must be satisfactory to TIAA-CREF. It is not clear whether "satisfactory to TIAA" means "written notice [in a form] satisfactory to TIAA" or "written notice [substantively] satisfactory to TIAA." This distinction is particularly relevant here, in light of the fact that TIAA-CREF provides contract holders with preprinted forms to change beneficiaries. (*See* D.I. 63, Exs. A2, A29 at 452-55) Furthermore, the annuity contract defines "Beneficiaries" as "the persons you name, *in a form* satisfactory to CREF." (*Id.*, Ex. A12 at 115 (emphasis added))

---

[13] TIAA-CREF concedes, however, that the phrase "satisfactory to TIAA" adds no requirements which would be ascertainable to the Decedent at the time the policy was issued, or at the time the Decedent desired to effect a change of beneficiary. (*See* D.I. 65 at 9 ("The ['satisfactory'] requirement was not something that Decedent could have strictly or substantially complied with . . . ."))

[14] In Delaware, "'the interpretation of contract language is treated as a question of law.'" *Rohn Indus., Inc. v. Platinum Equity LLC*, 911 A.2d 379, 382 n.3 (Del. 2006) (quoting *Emmons v. Hartford Underwriters Ins. Co.*, 697 A.2d 742, 745 (Del. 1997)).

The other ambiguous aspect of the provision relates to discretion. In one respect, "written notice satisfactory to TIAA" confers no discretion, since the phrase could be construed as simply stating the truism that TIAA-CREF is the party who initially must be notified of a change of beneficiary before any change to the contract actually is made. *See generally Cosey v. Prudential Ins. Co. of Am.*, 735 F.3d 161, 166 (4th Cir. 2013); *Herbert v. Prudential Ins. Co. of Am.*, 2014 WL 4186553, at *2 (E.D. Pa. Aug. 22, 2014).

Alternatively, "written notice satisfactory to TIAA" could be interpreted to mean that, subject to the implied covenant of good faith and fair dealing,[15] if TIAA-CREF is not subjectively satisfied with the written notice, then it does not have to approve the beneficiary change.

A third reading of "written notice satisfactory to TIAA" applies "satisfactory" to whether the written notice is adequate to accomplish a change of beneficiary, but construes the word "satisfactory" as objective rather than subjective. *See* Restatement (Second) of Contracts § 228 (1981) (Where a contract contains a condition that the obligor be "satisfied," "and it is practicable to determine whether a reasonable person in the position of the obligor would be satisfied, an interpretation is preferred under which the condition occurs if such a reasonable person in the position of the obligor would be satisfied.").[16] Under this objective reading, even honest dissatisfaction with the written notice will not avoid TIAA-CREF's obligation, if a

---

[15] The implied covenant of good faith and fair dealing "attaches to every contract, including contracts of insurance." *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (citations omitted).

[16] Similarly, Delaware law provides that, "when a contract gives one party discretion, 'it must not be exercised to deprive the other party of the benefit of the contractual relationship or evade the spirit of the bargain.'" *Hilco Capital, LP v. Fed. Ins. Co.*, 978 A.2d 174, 178 (Del. 2009) (citation omitted).

14

reasonable insurer in its position would be satisfied.[17] *Id.*; *see also* 2-5 Corbin on Contracts § 5.33 (2013).

There are several fair readings of the provision with quite different consequences and, therefore, the phrase is inherently ambiguous. In resolving the ambiguity, the court considers two rules of construction under Delaware contract law. First, where an insurance contract is ambiguous, "the doctrine of *contra proferentem* requires that the language . . . be construed most strongly against the insurance company that drafted it." *Rhone-Poulenc*, 616 A.2d at 1196 (citing *Steigler v. Ins. Co. of N. Am.*, 384 A.2d 398, 400 (Del. 1978)). The policy behind this principle is that the insurer is the entity in control of the process of articulating the contractual terms. *See Penn Mut. Life Ins. Co. v. Oglesby*, 695 A.2d 1146, 1150 (Del. 1997). Therefore, "[i]t is the obligation of the insurer to state clearly the terms of the policy." *Id.* at 1149. Second, "'an insurance contract should be read to accord with the reasonable expectations of the purchaser so far as the language will permit.'" *Steigler*, 384 A.2d at 401 (quoting *State Farm Mut. Auto Ins. Co. v. Johnson*, 320 A.2d 345, 347 (Del. 1974)).

Applying these principles, the court holds that "written notice satisfactory to TIAA" does not alert the contract holder to the possibility that TIAA-CREF may arbitrarily deny a change of beneficiary simply because it is not personally satisfied with every aspect of the written notice supporting the change.[18] Courts in other jurisdictions have similarly construed the phrase

---

[17] There is an exception to this objective construction, where the subject matter can only be subjectively and not objectively satisfactory, *see, e.g.*, Restatement (Second) of Contracts § 228 cmt. b, illus. 4 ("'A contracts with B to paint a portrait of B's daughter, for which B promises to pay \$5,000 'if entirely satisfied.'"), but satisfactory written notice of a change of beneficiary is not inherently subjective, so the exception does not apply.

[18] As the Third Circuit has observed, "[s]ince clear language can be readily drafted and included in [insurance] policies, . . . courts should require clear language and *decline to search in semantic swamps for arguable grants of discretion.*" *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 417 (3d Cir. 2011) (citation omitted)).

15

"satisfactory to [the company]."[19] Consequently, the provision confers no discretion, and requires only that the contract holder submit coherent written notice of the desired change in beneficiary that is signed and dated.[20]

Annuity contracts, such as the one in issue, are typically executed on a strictly commercial basis and, thus, TIAA-CREF has no interest as to whom a contract holder designates as beneficiary, except to protect itself against duplicate liability. Here, TIAA-CREF certainly had the opportunity to protect itself by interpleading the funds with the court, so that the court could properly have determined the respective apportionment, and distributed the annuity proceeds accordingly. Instead, TIAA-CREF acted at its own risk by erroneously deciding that the Decedent had not effectively changed the beneficiary of the contract.[21]

---

[19] *See, e.g., Strauss v. Teachers Ins. & Annuity Ass'n of Am.*, 639 N.E.2d 1106, 1109 (Mass. App. Ct. 1994) (construing "written notice satisfactory to TIAA" as "requir[ing] only such notice as would satisfy a reasonable insurer in TIAA's position"); *ITT Life Ins. Corp. v. Damm*, 567 P.2d 809, 810-11 (Colo. Ct. App. 1977) (explaining that the phrase "written request satisfactory to the Company" "did not impose additional conditions on the insured's right to change his beneficiary"); *Stewart v. Mut. Life Ins. Co.*, 522 S.W.2d 257, 260 (Tex. Ct. App. 1975) (holding that the phrase "'request satisfactory to the company' . . . is not an express policy condition that the consent of the insurance company is required to effect a change of beneficiary").

[20] This construction is further supported by a provision the annuity contract that provides: "When a notice of change in beneficiary . . . is received, *it will take effect as of the date it was signed.*" (D.I. 63, Ex. A12 at 100 (emphasis added)) Thus, under the terms of the contract, a change takes effect when the notice is *signed*, not when it is deemed satisfactory by TIAA-CREF.

[21] *See Michelman v. Lincoln Nat'l Life Ins. Co.*, 2011 WL 813735, at *3 (W.D. Wash. Mar. 2, 2011) (explaining that, in order to resolve competing claims to the proceeds of a life insurance policy, the insurer "would have to draw factual and/or legal conclusions, thereby running the risk that it would err and have to pay on the policy twice. *This is exactly the risk the interpleader procedure was designed to avoid.*" (emphasis added)); *Engelman v. Connecticut Gen. Life Ins. Co.*, 690 A.2d 882, 886 n.6 (Conn. 1997) (explaining that the insurer, by choosing to pay one of two competing claims to life insurance policy proceeds, rather than follow the interpleader procedure, "did so at its own peril"); *Travelers Ins. Co. v. Smith*, 435 N.E.2d 1188, 1190 (Ill. App. Ct. 1982) ("Interpleader protects the insurer from any danger of double liability.").

16

In sum, the court holds that the Decedent strictly complied with all of the requirements to change the beneficiary of the annuity contract to the Trust, and the Beneficiary Designation effectively accomplished that change.

## B. Estoppel

The doctrine of equitable estoppel may be invoked "when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment." *Wilson v. American Ins. Co.*, 209 A.2d 902, 903-04 (Del. 1965). To establish estoppel, "it must be shown that the party claiming estoppel lacked knowledge or the means of obtaining knowledge of the truth of the facts in question, relied on the party against whom estoppel is claimed, and suffered a prejudicial change in position as a result of that reliance." *Burge v. Fidelity Bond & Mortgage Co.*, 648 A.2d 414, 420 (Del. 1994) (citations omitted).

In the present case, TIAA-CREF contends that Plaintiff is "estopped from recovery" because he "acquiesced to TIAA's distribution." (D.I. 65 at 14) TIAA-CREF's argument is based on the notion that Plaintiff "ignore[d] TIAA's repeated reminders to enjoin distribution of the Annuity Account," and "completed and submitted distribution forms to TIAA requiring it to distribute the Annuity Account based on the original distribution scheme." (*Id.*)

TIAA-CREF's argument is unpersuasive, for several reasons. First, even though Plaintiff *could have* obtained a court order to enjoin the distribution, he was not obligated (contractually or otherwise) to do so. TIAA-CREF has not pointed to any provision in the annuity contract requiring a beneficiary to obtain a court order to prevent TIAA-CREF from distributing disputed proceeds. Moreover, TIAA-CREF was equally capable of filing, and perhaps in a better position to file, an interpleader action. Indeed, TIAA-CREF is a financial services organization in the

17

business of insurance and annuities.[22] Second, at the time Plaintiff submitted his distribution forms, TIAA-CREF had already distributed two-thirds of the annuity proceeds equally between Roten and Pedrick. (*See* D.I. 63, Exs. A20, A21) Thus, TIAA-CREF decided on its own to distribute the proceeds of the annuity account based on the original distribution scheme, prior to receiving Plaintiff's forms.

TIAA-CREF's assertion that Plaintiff "acquiesced" to the distribution because he completed distribution forms is an unfair "gotcha" argument. TIAA-CREF required Plaintiff to complete the distribution forms in order to receive the funds, yet it now claims that Plaintiff is precluded from seeking additional funds because he completed the forms. Under any set of circumstances, Plaintiff was eligible for a one-third distribution at a minimum and was required to complete the forms to receive it. Receipt of the undisputed one-third share does not prejudice Plaintiff from pursuing a claim for an additional one-third share.

Furthermore, it must be noted that Plaintiff expressly notified TIAA-CREF in writing that "[t]here may be litigation due to intended changes [to the annuity contract] that were not applied."[23] (D.I. 63, Ex. A19 at 167) TIAA-CREF even notified its legal department upon receiving Plaintiff's letter. (*Id.*, Ex. A18 at 163; *see also id.*, Ex. A21 at 203-09). It strains credibility for TIAA-CREF to claim after the fact that it "was 'under the impression that there was no further dispute going to be taking place.'" (D.I. 65 at 15) The dispute culminated with TIAA-CREF advising Plaintiff, on a Friday afternoon, that it had received distribution forms from Roten and Pedrick and would begin settlement of the annuity account the following

---

[22] *See Products & Services*, Teachers Insurance and Annuity Association of America, https://www.tiaa-cref.org/public/products-services (Last visited September 23, 2014).

[23] In fact, Plaintiff expressed discontent with TIAA-CREF's distribution throughout the entire settlement process, and mentioned "litigation" repeatedly. (*See, e.g.*, D.I. 63, Ex. A25 at 228-29, 235-36, 241-42, 251-52, 256-57, 259-61, 276-78)

18

Monday, unless Plaintiff provided a "restraining order" before then. (*See* D.I. 63, Ex. 21 at 208-09; *id.*, Ex. 25 at 221) At that point, Plaintiff had few options left, if any, and responded to TIAA-CREF accordingly:

> A.    Okay. So I guess there's really no point in beating this dead horse any more with [TIAA-CREF's] legal [department]? Because, you know, the more I read [the Beneficiary Designation] and when I look through it, it's really ridiculously obvious what [the Decedent] was asking for. And I, I don't know how that can't be, you know, resolved, and perhaps even without lawyers being involved.
>
> You know, as I read what it said, right, it said clearly that you need to provide documentation with a date and the signature on another piece of paper, which is exactly what she did, about changing the beneficiaries. It was exactly what she did. So I don't, I don't understand. I really don't.
>
> Q.    Well, I – she only – she attached a copy of the trust amendment. She did not attach a copy of the trust.
>
> A.    Well, the amendment is the effective trust, right?
>
> Q.    Well, the trust is going to have a name and it's going to have a date.
>
> A.    Okay, well, you have those papers. I did send that to you.
>
> Q.    Yeah, you did, after the fact.
>
> A.    Okay. Well like I said, it just – it's just kind of astonishing to me that, that this is all going to go awry because of, you know, her passing a week before you sent the letter [rejecting the Beneficiary Designation].

(*Id.*, Ex. A25 at 228-29) Consequently, there is no merit to TIAA-CREF's argument that Plaintiff's recovery is barred under the doctrine of estoppel.

## C. Unjust Enrichment

"Unjust enrichment is defined as 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.'" *Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999) (quoting *Fleer Corp. v. Topps Chewing Gum*, 539 A.2d 1060, 1062 (Del. 1988)). A party claiming unjust enrichment must prove: "'(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy

provided by law.'"[24] *Otto v. Gore*, 45 A.3d 120, 138 (Del. 2012) (quoting *MetCap Sec. LLC v. Pearl Senior Care, Inc.*, 2009 WL 513756, at \*5 (Del. Ch. Feb. 27, 2009), *aff'd*, 977 A.2d 899 (Del. 2009)).

"Courts developed unjust enrichment, or quasi-contract, as a theory of recovery to remedy the absence of a formal contract." *ID Biomedical Corp. v. TM Techs.*, 1995 WL 130743, at \*15 (Del. Ch. Mar. 16, 1995) (citing *Freedman v. Beneficial Corp.*, 406 F. Supp. 917, 923 (D. Del. 1975)).[25] Thus, a party generally "cannot seek recovery under an unjust enrichment theory if a contract 'is the measure of [the] plaintiff's right.'" *Id.* (alteration in original) (quoting *Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 942 (Del. 1979)). *Accord Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009). *Cf. Chrysler Corp. v. Airtemp Corp.*, 426 A.2d 845, 853-54 (Del. Super. Ct. 1980).[26]

In the present case, Plaintiff, Pedrick and Roten are third party beneficiaries to the annuity contract between the Decedent and TIAA-CREF, and the contract is the measure of Plaintiff's right. Because Plaintiff has sought, and obtained, a legal remedy against TIAA-CREF, by prevailing on his breach of contract claim, he cannot (and has no need to) seek a remedy for

---

[24] The fourth element of unjust enrichment relates to whether the accused party can retain a particular benefit "justifiably," or in accordance with "the fundamental principles of justice or equity and good conscience." *See Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 394 (Del. Ch. 1999); *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 586 (Del. Ch. 1998).

[25] In *Freedman*, this court observed that "[t]he quasi contract was developed by the law courts as a device for creating a 'contract' to remedy the absence of mutual promises under circumstances where it is necessary to preclude the unjust retention of an advantage or benefit." *Freedman v. Beneficial Corp.*, 406 F. Supp. 917, 923 (D. Del. 1975).

[26] In *Chrysler Corp.*, the plaintiff argued that because the defendant was a third party beneficiary under a sales contract between the plaintiff and a corporation, it should be permitted to recover from the defendant under quantum meruit. The court held that the third party beneficiary could not be held liable "on the theory of quantum meruit or implied contract, at least in the absence of inability to recover under the underlying contract." *Chrysler Corp.*, 426 A.2d at 854.

20

unjust enrichment. *See Seibold v. Camulos Partners LP*, 2012 WL 4076182, at \*22 (Del. Ch. Sept. 17, 2012); *see also* 12-66 Corbin on Contracts § 66.10 (2014) (explaining that "[e]xpectancy damages and restitution will not ordinarily be given as concurrent remedies for the same injury, although they may be pleaded as alternatives").[27]

## D. Prejudgment and Postjudgment Interest

### 1. Prejudgment Interest

"Interest is awarded in Delaware as a matter of right and not of judicial discretion." *Moskowitz v. Wilmington*, 391 A.2d 209, 210 (Del. 1978) (citations omitted). A plaintiff is entitled to recover prejudgment interest for a breach of contract claim pursuant to 6 Del. C. § 2301. *See Brandywine Smyrna, Inc. v. Millennium Builders, LLC*, 34 A.3d 482, 485-87 (Del. 2011).[28] Accordingly, the court grants Plaintiff's request for prejudgment interest.

### 2. Postjudgment Interest

Pursuant to 28 U.S.C. § 1961, a party is entitled to postjudgment interest on any money judgment in a civil case recovered in a district court from the date of entry. 28 U.S.C. § 1961(a) (2014). Thus, Plaintiff is entitled to postjudgment interest beginning on the date of this judgment to the date of full payment.

---

[27] "While a 'claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim,' a plaintiff may plead alternative claims for relief, regardless of consistency." *Capitaliza-T Sociedad De Responsabilidad Limitada De Capital Variable v. Wachovia Bank of Del. Nat. Ass'n*, 2011 WL 6650329, at \*13 (D. Del. Dec. 21, 2011) (citations omitted), *rev'd in part on reconsideration*, 2012 WL 3150386, at \*1 (D. Del. Aug. 2, 2012).

[28] "Prejudgment interest serves two purposes: first, it compensates the plaintiff for the loss of the use of his or her money; and, second, it forces the defendant to relinquish any benefit that it has received by retaining the plaintiff's money in the interim." *Brandywine Smyrna, Inc.*, 34 A.3d at 486 (citation omitted).

### E. Attorney's Fees

Plaintiff seeks attorney's fees in his Complaint. (D.I. 59 at 6) In legal actions in Delaware, attorney's fees will not be awarded "unless clearly provided for by statute or contract." *Honaker v. Farmers Mut. Ins. Co.*, 313 A.2d 900, 904 (Del. Super. Ct. 1973). Plaintiff has not identified any statute or contractual provision that provides for attorney's fees and, therefore, his request is denied.

### V.     CONCLUSION

The Court will enter a final judgment as follows:

(1) Judgment will be entered in favor of Plaintiff and against TIAA-CREF on his claim for breach of contract for the amount due to him under the contract, plus prejudgment and postjudgment interest;

(2) Judgment will be entered in favor of Pedrick and Roten on Plaintiff's claim for unjust enrichment.

The parties are directed to submit a form of order consist with the court's Opinion outlining the total amount due to Plaintiff, including prejudgment and postjudgment interest. An appropriate order shall issue.

Dated: September **29** , 2014

Sherry R. Fallon
United States Magistrate Judge

22